552 So.2d 914 (1989)
Joey Luis ROJAS, Petitioner,
v.
STATE of Florida, Respondent.
No. 73622.
Supreme Court of Florida.
November 22, 1989.
James B. Gibson, Public Defender and Brynn Newton, Asst. Public Defender, Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and Paula C. Coffman and Pamela D. Cichon, Asst. Attys. Gen., Daytona Beach, for respondent.
GRIMES, Justice.
We review Rojas v. State, 535 So.2d 674 (Fla. 5th DCA 1988), because of conflict with Spaziano v. State, 522 So.2d 525 (Fla. 2d DCA 1988), and Ortagus v. State, 500 So.2d 1367 (Fla. 1st DCA 1987). We have jurisdiction under article V, section 3(b)(3), of the Florida Constitution.
Rojas was convicted of second-degree murder. The issue before us concerns the manner in which the jury was instructed on the crime of manslaughter.
The judge began the instructions by essentially tracking the appropriate portion of the Florida Standard Jury Instructions in Criminal Cases, stating:
In connection with the accusation of murder in the first degree, murder in the first degree includes the lesser crimes of murder in the second degree, murder in the third degree, and manslaughter, all of which are unlawful.
A killing that is excusable or was committed by the lawful use  excuse me, by the use of justifiable deadly force is lawful.
If you find James Lorenzo Richardson was killed by Joey Luis Rojas, you will then consider the circumstances surrounding the killing in deciding if the killing was murder in the first degree or was murder in the second degree, or whether the killing was excusable or resulted from justifiable use of deadly force.
The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant may have been at the time of the killing.
The killing of a human being is excusable and, therefore, lawful when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident or misfortune in the heat of passion upon any sudden and sufficient provocation, or upon a sudden combat without any dangerous weapon being used, and not done in a cruel or unusual manner.
The judge continued by defining the elements necessary to prove first-degree premeditated murder and second-degree murder. With respect to manslaughter, he stated:

*915 Before you can find the defendant guilty of manslaughter, the State must prove the following two elements beyond a reasonable doubt:
One, that James Lorenzo Richardson is dead.
Secondly, that his death was caused by the act, procurement or culpable negligence of Joey Luis Rojas.
I will define culpable negligence for you. Under the law each of us has a duty to act reasonably towards others. If there is a violation of that duty without any conscious intention to harm that violation is referred to as negligence.
Culpable negligence is more than a failure to perform that duty or more than a failure to use ordinary care for others. For negligence to be called culpable negligence it must be gross and flagrant.
The negligence must be committed with utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known or reasonably should have known was likely to cause death or great bodily injury.
On appeal, the Fifth District Court of Appeal acknowledged the necessity to give a contemporaneous definition of justifiable and excusable homicide as part of the instruction on manslaughter. However, the court followed the rationale of Garcia v. State, 535 So.2d 290 (Fla. 3d DCA 1988), in which the Third District Court of Appeal had held under similar circumstances that the trial judge's failure to give the complete manslaughter instruction was harmless error.
The seminal case on this issue is Hedges v. State, 172 So.2d 824 (Fla. 1965), in which this Court pointed out that manslaughter was in the nature of a residual offense and that a complete definition of manslaughter requires an explanation that justifiable homicide and excusable homicide are excluded from the crime. Consistent with the principle of Lomax v. State, 345 So.2d 719 (Fla. 1977) (failure to instruct on lesser included offense constitutes prejudicial error), a substantial number of murder convictions have been set aside because of a Hedges error in the manslaughter instruction. E.g., Walker v. State, 520 So.2d 606 (Fla. 1st DCA 1987); Niblack v. State, 451 So.2d 539 (Fla. 2d DCA 1984); Pouk v. State, 359 So.2d 929 (Fla. 2d DCA 1978). In Hedges, the failure to refer to justifiable and excusable homicide while defining manslaughter occurred when the jury requested a reinstruction on the different degrees of murder. However, subsequent cases have applied the same principle to instructions first given to the jury before it retires for deliberation. Brown v. State, 467 So.2d 323 (Fla. 4th DCA 1985); Delaford v. State, 449 So.2d 983 (Fla. 2d DCA 1984). The error has been deemed fundamental when it occurs during the original instructions, Alejo v. State, 483 So.2d 117 (Fla. 2d DCA 1986), but an objection is required to preserve the error when it occurs during a reinstruction. Castor v. State, 365 So.2d 701 (Fla. 1978).
In the Garcia case relied upon below, the defendant, who was convicted of second-degree murder, complained of the failure of the judge to define justifiable and excusable homicide while reinstructing the jury on manslaughter. The Third District Court of Appeal held that the error was harmless upon the following reasoning:
In the present case, the jury, by returning a guilty verdict to the second-degree murder charge after reinstruction, necessarily found that the killing was done  as a conviction for second-degree murder requires  not only by "an act imminently dangerous to another" (which arguably would include justifiable and excusable homicides), but one "evincing a depraved mind regardless of human life" (which excludes justifiable and excusable homicides), § 782.04(2), Fla. Stat. (1985). This affirmative finding that the killing was done with "a depraved mind regardless of human life" negates the possibility that the jury convicted the defendant solely on a finding that the victim's death was caused by the act, procurement, or culpable negligence of the defendant... . Where ... as here, the jury's verdict  necessarily including that the defendant *916 acted with "a depraved mind regardless of human life"  assures us that no such possibility exists, no harm comes to the defendant when justifiable and excusable homicide are not defined.
535 So.2d at 292. However, this Court recently disapproved similar reasoning in Stockton v. State, 544 So.2d 1006, 1008 (Fla. 1989), when we said:
We reject the state's contention that the refusal to include justifiable and excusable homicide in the reinstruction, in this case, was not error because the jury's request demonstrates that it had already determined the homicide was unlawful.
Relying upon its opinion in Stockton, this Court has now quashed the Garcia opinion of the Third District Court of Appeal. Garcia v. State, 552 So.2d 202 (Fla. 1989). Thus, it follows that we cannot accept the harmless error analysis adopted by the Fifth District Court of Appeal in the instant case.[1]
The fact that the judge defined excusable and justifiable homicide in the beginning of the homicide instructions did not suffice to make the manslaughter instruction legally adequate. Recognizing the need to refer to justifiable and excusable homicide in the context of defining manslaughter, this Court in 1985 approved a recommendation of the Standard Jury Instructions Committee to add after the definition of the elements of manslaughter the following language:
However, the defendant cannot be guilty of manslaughter if the killing is either justifiable or excusable homicide as I have previously explained those terms.[2]
As in Spaziano and Ortagus, the total omission of any reference to justifiable or excusable homicide in the definition of manslaughter was fatal.
We quash the opinion of the district court of appeal and remand for further proceedings.[3]
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
NOTES
[1] We do not recede from the subsequent refinement of Lomax v. State, 345 So.2d 719 (Fla. 1977), which holds that the failure to give an accurate instruction on a lesser included offense which is two steps removed from the crime of which the defendant is convicted constitutes harmless error. State v. Abreau, 363 So.2d 1063 (Fla. 1978). We recently applied this principle by holding that a Hedges error did not affect a conviction for first-degree murder in our original opinion in Banda v. State, 536 So.2d 221 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989), to which the Third District Court of Appeal in Garcia referred and upon which the Second District Court of Appeal based its decision in Tobey v. State, 533 So.2d 1198 (Fla. 2d DCA 1988). This portion of our opinion in Banda was later withdrawn only because, upon motion for rehearing, the appellant explained that he was not arguing that the judge had erred in failing to give a complete instruction on all the lesser included offenses of homicide.
[2] In view of the fact that the standard jury instructions already provide for the definitions of justifiable and excusable homicide to be given during the trial judge's introductory remarks, the current standard jury instruction on manslaughter adequately reminds the jury that justifiable and excusable homicide are not contained within the definition of the crime. However, because reinstructions often occur several hours later, a note was added which advised the judge that in the event of any reinstruction on manslaughter, the original instructions on justifiable and excusable homicide should be given at the same time.
[3] This opinion is directed only to the failure to instruct on justifiable and excusable homicide as it relates to the definition of manslaughter. In those cases in which there is evidence to support the defenses of justifiable or excusable homicide, the standard jury instructions provide for longer and more explicit instructions to be given on these defenses. We do not pass on the conclusion of the district court of appeal that the evidence in the instant case did not warrant the longer instruction on justifiable or excusable homicide.