756 So.2d 205 (2000)
Aldean DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-0794.
District Court of Appeal of Florida, Fourth District.
April 19, 2000.
*206 Richard L. Jorandby, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, Consuelo Maingot, Assistant Attorney General, and Meredith L. West, Certified Legal Intern, Fort Lauderdale, for appellee.
STEVENSON, J.
Following a domestic dispute, Aldean Davis was charged with aggravated battery on a pregnant woman (count I), aggravated assault with a weapon (count II), and battery (count III). A jury found Davis guilty of counts I and III and, with respect to count II, guilty of the lesser included offense of improper exhibition of a weapon. Davis challenges his convictions, contending that the trial court abused its discretion by limiting his cross examination of Regina Drayton, the victim of counts I and II. We find merit in Davis' argument and reverse.
At trial, Regina Drayton, who was eight months pregnant at the time of the offense, testified that she, her children, her boyfriendBenjamin Clowers, her motherWilladean Ragland, and Davis were in her living room watching television. According to Drayton, her mother and Davis had been drinking and her mother was intoxicated. Drayton stated that her mother and Davis were sitting together on the loveseat and that she was seated in a nearby chair, braiding Clowers' hair. According to Drayton, Davis was attempting to convince her mother to go outside with him and, when she refused, Davis slapped her mother in the face. After Davis struck her mother, Drayton stood and asked Davis to leave. Drayton then testified that, when she attempted to step between Davis and her mother, Davis shoved her, causing her to stumble backwards. As a result, Clowers, who had been seated on the floor, stood up. At this point, according to Drayton, Davis pulled out a gun and waved it around. When they saw the gun, Drayton and Clowers grabbed the children and took them to a back room. As Ragland approached the doorway, Davis again struck herthis time knocking her to the ground. Drayton and Clowers grabbed the children and fled from the home, calling the police from a neighbor's. By the time the police arrived, Davis was gone.
Ragland, like Drayton, testified that she, Davis, Drayton, Clowers and the children were in the living room. Ragland stated that she and Davis were sitting on the loveseat together and that Davis suddenly slapped her twice. Ragland denied that she was intoxicated, but admitted to having two beers. Ragland testified that after Davis struck her, she went into the kitchen. As a result, Ragland did not see Davis shove her daughter nor brandish a gun. According to Ragland, when she came out of the kitchen, her daughter, Clowers and the children were headed out the front door. Ragland testified that Davis then struck her a second time, knocked her to the floor, and continued to strike her. Contrary to Drayton, however, Ragland testified that her daughter did not witness this second attack.
Davis' theory of defense, at least with respect to the charges relating to Drayton, was that the shoving and brandishing of the weapon simply did not take place. From the very outset, defense counsel argued that there would be conflicts in the testimony as to what happened that afternoon and, in particular, attempted to focus on the fact that Drayton did not initially tell police that Davis had shoved her and waved a gun around. For *207 example, when defense counsel cross examined Deputy Lewis, the officer who responded to Drayton's call, he brought out the fact that the officer had not included any charge of aggravated battery on a pregnant woman. And, when Drayton testified, defense counsel attempted to impeach her by showing that in the statement that she initially gave to police, she did not mention that Clowers was present or that Davis had shoved her. The State objected to defense counsel's attempt to impeach Drayton on the ground that the line of questioning represented "negative impeachment." The trial judge sustained the objections; it is these evidentiary rulings which Davis contends entitle him to reversal and a new trial.
Florida Statutes section 90.608(1) provides that a party may attack the credibility of a witness by introducing statements of the witness which are inconsistent with the witness's present testimony. As Davis points out, impeachment via an inconsistent prior statement has been held to include impeachment with prior material omissions.
It is well settled that a witness may be impeached by a prior inconsistent statement, including an omission in a previous out-of-court statement about which the witness testifies at trial, if it is material and would naturally have been mentioned.
McBean v. State, 688 So.2d 383, 384 (Fla. 4th DCA 1997)(citing State v. Smith, 573 So.2d 306, 313 (Fla.1990))(emphasis in original).
This court recently addressed a similar "negative impeachment" issue in Sanjurjo v. State, 736 So.2d 1263 (Fla. 4th DCA 1999). There, defense counsel sought to impeach the victim by pointing out that some of the details of his trial testimony had not been divulged in an earlier statement. Under the victim's version of events, Sanjurjo had stepped in front of his moving vehicle and, when the victim pulled into a convenience store, Sanjurjo attacked him, threatened him with a knife, and took the victim's wallet. According to the victim, he went into the convenience store to report the incident and Sanjurjo returned the wallet with nothing missing. For his part, Sanjurjo admitted that he had accosted the victim and struck him in the head, but Sanjurjo denied trying to steal the wallet. According to Sanjurjo, he had picked the wallet up from the ground, thinking that it was his. Sanjurjo explained that when he realized that it was not his, he returned it to the victim. At trial, the victim added the fact that he "had tried to convince the appellant to take only the money that was in his wallet and not the wallet, but that the appellant had taken the entire wallet." Id. at 1263-64.
Defense counsel sought to impeach the victim by bringing out that this additional detail had been omitted from his deposition. The State objected arguing that the question was improper "negative impeachment." The trial court sustained the objection. Sanjurjo was convicted of robbery and, on appeal, challenged the trial court's evidentiary ruling. This court reversed.
Section 90.608(1)(a), Florida Statutes (1997) recognizes the right to impeach a witness and attack his credibility with statements which are inconsistent with the witness's present testimony.
To be inconsistent, a prior statement must either directly contradict or materially differ from the expected testimony at trial. That includes allowing "witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted."

State v. Smith, 573 So.2d 306, 313 (Fla.1990)(quoting Jenkins v. Anderson, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980)). See also McCormick, Evidence § 34 at 114-115 (4th Ed.1992); Charles W. Ehrhardt, Florida Evidence § 608.4 (1998 Edition). Accordingly, the state's objection that this was "negative impeachment" was not *208 well taken, and the court erred in sustaining it.
736 So.2d at 1264.
As in Sanjurjo, we believe that the trial court erred in refusing to permit defense counsel to impeach the victim with her prior, material omissions. Drayton's trial contentions that Davis shoved her and waved a gun around are the type of facts that "naturally would have been asserted" when police asked her what happened. Moreover, we cannot accept the State's invitation to find the error harmless. Drayton was the only witness to testify that Davis shoved her and waved a gun aroundthe evidentiary basis for counts I and II; thus, the jury's assessment of her credibility was critical. Accordingly, we reverse Davis' convictions and remand for a new trial.
REVERSED and REMANDED.
FARMER and KLEIN, JJ., concur.